THE PEOPLE OF THE STATE OF NEW YORK ex rel. MARY R. and SARAH E. BRUSH, Appellants, v. JOHN R. BROWN, Respondent.

*Custody of child — the rights and interests of the child are to control.*

The mother of a child having died a few weeks after its birth, the father placed the child with relatives of the mother, who nursed and cared for it until it had attained the age of seven years. After the child had been cared for while very delicate and sickly, the father gave a written promise to the relatives by which he agreed that the child should never be taken from them. Subsequently, the child having been allowed to visit the father, the latter refused to allow him to return to his relatives. Upon the return to a writ of *habeas corpus*, procured by the relatives, the court refused to receive evidence tending to show that the present wife of the father was an improper person to have charge of the child, and that his home was an improper place in which to bring up a young child.

*Held*, that as the decision as to the custody of the child was to be determined by its rights and interests the court erred in rejecting the evidence.

Appeal from an order, made at a Special Term, dismissing a writ of *habeas corpus* heretofore granted herein.

*B. F. Tracy*, for the appellants.

*Joseph H. Choate* and *Charles C. Beaman*, for the respondent.

Barnard, P. J. :

It is not clear from the authorities that a father may recede from an engagement in respect to his child, made with one who has received the child under it. The papers showed that the child was born in March, 1874, and that the mother lived but a few weeks after. That the infant was placed by the father with the appellants, two ladies, who lived in Suffolk county and who were distant relatives of the deceased mother. These ladies procured a nurse and by their care and affection probably saved the child's life, as he was disposed to be delicate, which he did not outgrow until within two years and he is now about seven years of age. In the fall of 1874, the father gave a written promise and agreement that he would never take the child from the ladies who were bringing him up. The paper recites the father's gratitude to the ladies and acknowledges the justice of a claim based upon the fact that those who under the circumstances were caring for their deceased relative's child would probably become intensely attached to him. The gift of the child is made "upon my honor" as expressed by the father. Under these papers the child has been watched, nourished, clothed and instructed until he has reached an engaging age and what was expected has in fact been realized. The ladies are attached to the child. The child looks upon them as his parents. After this lapse of time the father requests a visit from the boy. It was made and the father fails to return him. The ladies manifest anxiety and the boy pines to go home. The father resents this conduct as an injury to him and he announces to the ladies that although he is conscious that it will cause them "much unhappiness" he means to guide the boy "to the good and true" thereafter. The father has been relieved from trouble and expense by means of his agreement and the ladies have been made anxious by the great responsibility as to the child and have devoted time and money based upon this promise. If the subject were anything but a child it would not be averred to be the

correct and legal thing to avoid the engagement because it was against public policy and against the paternal right. I do not think these cases call for such a rule. They hold that the father's right is paramount as to the custody of the child. That as against the mother all things being equal his right is the best. That an agreement between husband and wife as to the custody of the child is bad. It is not necessary to decide this question upon the present record. It may be stated as a general rule in this state that the rights and interest of the child are paramount upon the question of the custody of the child. (*Wilcox* v. *Wilcox*, 14 N. Y., 576.) This question includes the home of the ladies from which the boy goes. That is clearly seen from the case. It includes also the home of the father. The Special Term refused to receive proof that would show it to be an improper home to which a child of seven and upwards should go. The glimpse obtained from the evidence is not favorable. The father was the cause of the divorce of a former husband of his present wife by her adultery with him. After the divorce he married her. Proof is refused which would show or tend to show that the present wife is very intemperate in some cases, at times to such an extent as to be helpless. Proof tending to show what this home is in respect to assemblages and practices in what is known as spiritualism is also refused. The proof of the character of the respondent's home should have been received.

The order should therefore be reversed, and the case remitted to the Special Term so that this evidence may be received.

Dykman and Pratt, JJ., concurred.

Order reversed and proceedings remitted to Special Term, to take evidence as to the fact that the father's house is an improper place for the boy.